The next case for argument is 24-1794, Medivis v. Novarad. Mr. Steinmetz. Don't take your cue from the proceedings. I didn't intend to, Your Honor. In fact, I was hoping for a much shorter argument. May it please the Court. Adam Steinmetz on behalf of the appellant, Medivis. I'd like to focus my argument today on the motivation to combine issue and then, time permitting, address the virtual 3D shape claim construction issue. The IPR petition presented a two-reference combination, Amira and Deux. Amira is an image visualization technology for rendering three-dimensional images on flat screens. Deux teaches overlaying medical images onto a patient. Importantly, Deux recognized problems with conventional image visualization technology systems like Amira and then proposed itself as a solution to those problems. The problem with systems like Amira, as Deux recognizes, is distraction and cognitive load. So you're looking down at the patient. You have to look up at a screen in the operating room. Then you're looking down at the patient and you have to look back up. So there's a lot of things going on in the operating room and proposed itself as a solution overlaying the imagery onto the patient. Deux proposed it. Deux proposed itself, exactly. Now, that was the motivation to combine that Medivis proposed. It identified the setting, an operating room. It identified a problem. Conventional systems like Amira cause cognitive load and distraction issues. And it identified a solution overlaying onto the patient. Under the flexible KSR standard, that demonstrates the desirability of making the combination of the two references. That was sufficient to get past the motivation to combine stage and move to the obviousness stage where we analyze what's disclosed in the references and whether it teaches the claim limitations. Just so that I am clear about a procedural aspect that I think hasn't really come up. The original petition was rather thin on the motivation. You presented in the reply this distraction issue. And neither the other side nor the board argued or found that it was inappropriate to rely on the reply presentation of the motivation so we can treat that just as if it were part of the petition because you would have a tougher case if you were relying only on what was said in the petition. I think that's right, Your Honor. I think the petition did propose a broader scope. And you are correct that neither the other side nor the board took issue with that. They addressed it in a reply. And the board does have discretion. That's the core photonics case, which says that the board does have discretion to address issues that were raised in reply. It was also addressed in an oral argument, twice an oral argument. And do I remember right? This is a case in which the board didn't even say it was too late. But even if it wasn't too late, it's also meritless. Correct. The board just addressed the motivation to combine as if it had been presented all at once. That is correct, Your Honor. Now, the problem here is that when Medivis proposed this motivation to combine, which was based on Due proposing itself as a solution, that showed the desirability of making the combination of the references, the teachings of the references. The board held Medivis to a higher standard, which is to say the board said, well, you can't have this broad motivation to combine that addresses the technology of systems like AMIRA. You'd have to have a specific reason why a person of ordinary skill in the art would have looked to AMIRA to also solve cognitive load problems. There was an inversion of the way the board treated the motivation to combine compared to the way Medivis did. The board said Medivis failed to show why a person of ordinary skill in the art would have looked to AMIRA to solve cognitive load problems if they already had Due. Now, that's the rigidity, starting with Due and having to fit AMIRA into it. That's the type of thing. Didn't the board just misunderstand your reply argument? Yes, I think that's correct. It looked to me like your original argument in your petition was that there was a proposal would be expected here to have a motivation to combine because Due somehow would improve AMIRA. Pardon me, that AMIRA would improve Due. And that was general. Just it looked to me like the board wasn't even really addressing that. When they get to this, they take your second argument and misthink that you're still making the same argument, that somehow it was going to be a condition where AMIRA was going to improve Due. And they just missed. I think that's right. I think they fundamentally misunderstood and tried to structure it into an order whereby AMIRA had to somehow improve on Due's technology. Your argument to us now isn't that the board didn't accept your primary argument. It's that they didn't accept your secondary argument. It's that they fundamentally misunderstood the argument as a second argument, which was that AMIRA has got a cognitive overload problem and Due would solve that. That's correct. But as addressed earlier, the board had exercised its discretion to consider the entirety of the argument on motivation to combine as though it had been presented in the petition. It wasn't phrased that way. But the board did not suggest that there was an improper raising of that argument in the reply warrant. They were already objective. Nobody objected to it, correct. Can I just ask, so is this the same issue or a cousin of it? So if you think back to the old, maybe no longer so good, Winslow Tableau view of the world, where all the analogous prior art is sitting on a wall and you have to figure out why you would look at this piece and this other piece, did the board effectively say, even in reply, you didn't really do that? That is, you're looking at one piece, Due, and it identifies a problem. And the artisan would say, yeah, this is a problem. Maybe we can do better. But you still need something slightly more specific to say, why would you look over there to get a Myra? Or is this not what the board did? Yeah, I think that I'll accept the analogy that that's what the board did. And I think under the KSR standard and then also the cases that we cited, the Intel versus Qualcomm case, which was non-presidential but cited the In re Fulton case about desirability, I think that the standard has changed from a need to identify, to start with a specific reference and then identify a specific reason why you would look to that specific reference to combine it. It's much more flexible that you can have a situation as here where, for example, Due does not teach or does not purport to teach new image visualization technologies. It runs through, it explains a number of different three-dimensional modalities that could be used with its system, but it does not purport to have invented those technologies because it recognizes that there are existing three-dimensional image visualization technologies out there, and they're causing these problems of cognitive load and distraction in the operating room. And I don't remember, did you have anything to the effect that Amira was a particularly prominent kind of prior art reference about visualization improvements? There wasn't anything specifically that it was particularly prominent. And this actually gets to the question of whether the discussion of the scope and content of the prior art in the background section was maybe disregarded too much. There was discussion of Amira. There was discussion of other technologies, 3D slicer and 3D visualization. There was a number of prior art references discussed. Amira was discussed pretty extensively in terms of its disclosures of color variation and bounding boxes, et cetera, which gets to the elements of the claim that was relied on later on in the obviousness analysis. But again, the board didn't reach that portion of the obviousness analysis because it foreclosed the whole analysis just at the motivation to combine stage, which, to Judge Clevenger's point, I think the board just fundamentally misunderstood what the proposed motivation to combine was. And it held MetaVis to a standard that under KSR, under Intel versus Qualcomm, under Fulton, the desirability of making this combination, especially because do recognize the problem, was there and it was met by MetaVis. Incidentally, it does not have to be the same motivation. The law is clear. It does not have to be the same motivation that motivated the inventor of the 271 patent. But in this case, it actually is pretty similar to the motivation. This is at the bottom of columns two and three of the patent on appendix 49 and 50, where the patent actually talks about the problems associated with having to look to screens in the operating room. You look up, and then you look back down, and you might operate on the wrong side because you're trying to translate that in your head when you look up at the screen and then look back down at the patient. So incidentally, the motivations for the patentee in this case in the 271 patent and the motivation that MetaVis proposed based on the do reference were actually very similar. They need not be, but in this case, they were. Now, I want to turn to what Novorad's response is here, what my friends on the other side have responded in their red brief. They argue for an even more stringent standard, which is to say that the motivation to combine, and this repeatedly comes up in the red brief, at page 15 and 41, for example, they say that the motivation has to be to combine the references in exactly the same way as required by the claim. They say that twice. They also say on pages 16 and 40 of the red brief, in the way the claimed invention does. There's no question that the obviousness analysis has to disclose everything in the way that the claim does. But the KSR standard does not require precise teachings directed to specific claim limitations. That is not the standard under KSR. Under KSR, a motivation to combine two references, the teachings of two references, because of the desirability of making that combination is sufficient to show a motivation to combine. And then at pages appendix 173 through 185, Medivis provided in the petition the disclosures from each of the references that disclose each of the claim elements. What about the likelihood of success? The reasonable expectation of success. The reasonable expectation of success. Yes, Your Honor. What's in the record here, from your point of view, is really skinny. It may be skinny. The board didn't. I know they didn't do it. That's correct. At most, you're asking for a remand. Absolutely, we are asking for a remand. Not a reversal, for sure. We are asking for a remand for the board to address the motivation to combine that was presented. Look at the actual record. As I read the arguments you made in your initial filings, it was very, very thin, very highly conclusory. Your expert said, well, I just think there isn't a problem. The other side put in some specific evidence from their expert, which is Henri Bottet, said that there were technical problems. They did say there were technical problems. And we addressed this in the gray brief, where I think a lot of the arguments that they talk about with technical problems go to the bodily incorporation, whether or not you could actually take Amira's technology and implement it directly into due. But again, this would be a question for the board to consider. I think that the due reference itself, by walking through the various three-dimensional reality. Doesn't a reasonable expectation of success go to that? It does, Your Honor, yes. Doesn't it really ask whether you're putting a square hole in the round peg? I think it does go a little bit to whether the technologies can be merged with each other. But I don't think it requires a showing that the, I think, the distinction that was made in the red brief was the virtual reality system of Amira would not be implementable in an augmented reality context of due. And I think that that goes, the comparison and contrasting of virtual reality and augmented reality really is about bodily incorporation, as opposed to whether the teachings of Amira would have a reasonable success of being implemented in due. For example, a bounding box or colored variation. And I do think that by walking through the various three dimensional modalities, due does create a reasonable expectation of success. There is no requirement that we have expert testimony specifically addressing a motivation to combine. That is not a requirement under the law. So I am into my rebuttal time. I'll save my rebuttal time for sure. Thank you, Your Honor. Good morning.  May it please the court. My name is Jed Hanson. I am counsel here today for NOVA RAD. Medivis had both the burden of production and persuasion at trial to convince the court, the patent trial and appeal board, excuse me, that the challenged claims were unpatentable. The board weighed the evidence, heard the testimony, and found that they'd failed to carry that burden. I think what Medivis wants to do on appeal is convert what is substantially a factual issue into a legal one. And that factual issue was reviewed for substantial evidence by this court. Motivation to combine, whether there's enough evidence to support that, that's a substantial evidence review. And to Judge Clevenger's comments, the utter lack of evidence of a reasonable expectation of success, that is also a substantial evidence standard. The court doesn't remand cases because one party disputes the factual findings of the lower court. What do you make of the board's appendix 24 towards the end of the paragraph, where they talk about the motivation wouldn't be reducing the cognitive load? The cognitive load issue?  I agree with that. I agree with what they said, that they would not. So they ultimately concluded, petitioner does not persuasively explain why one of ordinary skill in the art would turn to yet another reference, like Amira, for an additional solution, even what that solution would be. Do you understand what the board was saying? I do understand, Your Honor. First of all, the argument with respect to due and the cognitive load issue was pure attorney argument on reply. There's no evidence from any expert testimony explaining what that meant or what that scope would mean. And so you're talking with just pure attorney argument, parsing things from due and saying, hey, here's something. And the reason why they did that is because on opposition, they understood how thin the original petition was. And they had understood that they really had utterly failed to provide any evidence on a motivation to come in. So what do they do? They scrape through what they have on the record, and they come up with this cognitive load argument. The board should have rejected the reply argument on the ground that it was attorney argument, not based on the record? That ship has sailed, has it not? I mean, we're not reviewing. You have an appeal that the process issue of the board not entertaining the reply. Yeah, no, I'm not arguing that, Your Honor. I'm just stating out the fact that there is no underlying factual testimony in support of that argument. The board did entertain it. It was attorney argument, but there is no factual support from an actual witness that supports or corroborates that attorney argument. The board didn't err. We didn't object. Do they have an expert witness? They do have an expert witness. And didn't he say a person skilled in the art would be motivated to do this because of the improvements? He did very, very. Four times, he didn't say it verbosely, but he said it, right? Very generally, he stated, and it's very thin. It's in APPX 1587, that he would combine AMIR with DEW to enable the intraoperative medical image viewing system and method disclosed in DEW to take advantage of visualization technology disclosed in AMIRA. That's it. That's the extent. That was in a petition. That is in the petition. That's a petition. And that theory has now been discarded and thrown away, and your adversary doesn't rely on it at all. We're talking just about the cognitive load issue. Yeah, so why don't we talk about that? Yeah. Your adversary is relying on the reply argument, and he said there is a problem here that will reverse who's benefiting whom, right? There's a cognitive overload problem in AMIRA, because you've got to look at the screens. And DEW teaches, will you overlay? And so that is a motivation of why one of the three, if one of them is still in the art, walked into their inventing room, and they had on the table DEW, and they had AMIRA, they would look at AMIRA, and they'd say, well, look, DEW and AMIRA are sort of doing the same thing, except guess what? AMIRA doesn't have an overlay, and their people have this cognitive overload. So that's a reason to put them together, right? I understand what your argument is saying. So that, to me, is the argument that your adversary is making. And he's saying, well, and the board messed up because they didn't appreciate, didn't understand that. They thought that we were trying to further reduce cognitive overload in DEW, which is crazy, because you didn't need to do that. And now you're telling me that the trouble with their reply theory is that it wasn't record-based. That's one problem. No, I'm just, you didn't make that argument in your brief. I believe we did point out that. Like where? We pointed out that it was brought up on reply. But you didn't object. We did not object. So my point is, I think you're making an argument here now that you didn't make in your red brief, and I don't think that's what you're supposed to do. Let me move on, then, to answer your honors question about AMIRA. AMIRA doesn't make any mention at all of being used in any kind of surgical environment. There is no suggestion or any evidence that AMIRA was intended to be used by a surgeon in that surgical environment, and that, therefore, there would be some kind of cognitive load problem to solve. AMIRA is simply something that's used either in a virtual reality environment, so that you can look at data, or on your computer screen, so you can look at anatomy of a patient. There is no evidence whatsoever in AMIRA that suggests it would have been used in a surgical environment and then have some kind of cognitive load problem that it do would solve. Can I ask you, I guess, a very particular question about do. In, I guess, the title and throughout the document, it talks about an intraoperative medical image viewing system. Does that mean during an operation, or is it like, what does that mean? I think that means during an operation. I think do is intended to look at images during surgery. AMIRA is not. AMIRA has nothing to do with that at all. AMIRA is simply something that you would pull up on your computer and take a look at medical data, or there is a virtual reality. Now what you're arguing is that it was harmless error for the board to misunderstand the theory. Well, I don't think the board misunderstood. I don't know whether this is an argument that we should be greeting, or whether it should be greeted on remand by the board when we simply tell the board, excuse me, you didn't really understand the reply argument about what the theory was for the motivation to come by. Yeah, I think you're asking me to have to learn a lot about what AMIRA does or doesn't, how it's being used, whether people who are operating in an operating theater would have any knowledge of the 3D technology that's in AMIRA. You're making an argument that AMIRA is over here just a data patent, and that do is an operating theater patent, right? Well, AMIRA is not a patent. There's no reason why anybody would want to try to combine to somehow make an improvement in AMIRA. But that goes to kind of a further level of the motivation to combine that there's no evidence in the record one way or the other on that. And I think the evidence about AMIRA, so AMIRA isn't a patent. AMIRA was a software package. So what we have. I just wondered whether this wasn't an instance in which a board was sort of, I don't want to sound pejorative, but the board was just sort of doing a slapdash job here. They look at the 103, and they say easy way to get rid of this is that there is essentially a frivolous argument on the motivation to combine. Why would you possibly take AMIRA to further reduce cognitive load and do? It's just nuts. So goodbye. That is what the board said. I don't want to be pejorative, but it's kind of like, this is frivolous. I don't even need to think about this anymore. And you've now given us, given me some more reasons to think about it, which is if I understand it correctly, well, is there any, was there anything in the petition or in the reply that gave any merit to this whole question about a cognitive overload? Was it just a turning argument? That might be a ground on which the board and the remand would throw it out. Or then the next question is, well, what was the, why would you be trying to make some change in AMIRA anyhow? See what I mean? These arguments that you're laying in. Yeah, I think the board had all of this evidence in front of it. What evidence? The evidence about AMIRA and the evidence about due, and it heard the argument on reply, and it heard the argument that counsel need. We don't know from the description of the scope and content of the prior work, they're not telling us a whole lot about AMIRA. Well, they're telling, I think they're telling in their order what they think was necessary in order to convey their opinion and their order. And that was that due says, hey, I've got a problem of cognitive load, and here's, and in due, I present my own solution of cognitive load, right? So that's what, do you identify the problem? Due solves the problem. And then what my friends on the other side argue is, well, because it identifies a problem of cognitive load, then any other piece of prior art anywhere that has to do with visualization technology, well, I guess I get to combine that with due to solve cognitive load, even though there's no evidence. Well, that was in the first theory. No. They're not talking about the first theory. No, they don't talk about cognitive load in the petition. They talk about cognitive load on reply, if I'm understanding your honor's point. Yeah. I thought your argument you were making now about their evidence was directed more to their first theory than the second theory. No, no, on second theory, right, if you're gonna take their argument that you find cognitive load in due, and then I can apply that to any visualization technology piece of prior art anywhere, then what you're essentially saying is that I don't need a motivation to combine, or I don't need to understand what that other technology is that due's cognitive load now all of a sudden gives me enough to combine with any other visualization technology anywhere else. And I don't think that's the law. And what would be deficient about that? Excuse me? Why would that be deficient? I think under the KSR standard, there's not enough underpinnings there to combine or motivate the person of ordinary skill to combine any kind of visualization technology, no matter what it is or where it was intended or what it was understood to be. Anytime, 3D, we're talking about 3D technology here. It's three-dimensional visualization technology. Why wouldn't you? Because it has nothing to do with being done in a surgical environment. No evidence that that would have been done whatsoever in an augmented reality situation. And I think this court in Active Video Networks explained why when it cited the KSR and said, look, if I were going to do that, and I was gonna say, look, I can combine anything else just because one piece of prior art says it's got a problem. Well, pretty much any other piece of prior art could be combined with it. And in that case. Well, in that regard, I guess this is connected in some way to the question I asked Mr. Steinmetz. Amira is a user's guide for an on-the-market product. It's not an article sitting in a German library. So why is, if Due presents and even recognizes a problem of cognitive overload and is written to suggest, I'm trying to do something that can be used with common medical imaging products. Why would Amira not be a pretty likely place to look? It's not obscure. Maybe this is the fancy user guide. I don't remember if there's anything in the record about the product that Amira is a user guide for, but it doesn't look obscure. I'm not arguing that it's obscure, Your Honor. I'm arguing that there is no testimony or evidence to suggest that the person from Due would go look to Amira. Or, and I think the unrebutted testimony from Novorad's expert is that you wouldn't do so and that it wouldn't reduce cognitive load. Your Honor, I have one minute left and so I will just address the one point that was raised by Judge Clevenger and that is the obviousness standard requires a motivation to combine and a reasonable expectation of success. And there's just no evidence of that on the record at all. Okay, and except for mentioning the words expectation of success, there's no analysis of that. There was no evidence to analyze. There was one statement from the expert witness in that same reference that I made previously in 1587. Just simply, they would have had a reasonable expectation of success in combining the intraoperative medical image viewing system and method disclosed in Due with the visualization technology disclosed in Amira. That's it. And say why? Not at all. And so if you were to remand that, there's no evidence for them to look at or consider. And so I don't think a remand is going to be any more beneficial than just an affirmance. Thank you. Thank you. Just to address a few of the points that were made by my friend on the other side, the issue of whether or not there was attorney argument, I think that was the point he was making. There was no expert testimony on something. There's no law that requires expert testimony to support a motivation decline or a reasonable expectation of success. And Due itself discusses the cognitive load problem repeatedly. It discusses it at paragraph three, paragraph four, paragraph five. It repeatedly discusses the cognitive load problem and how it's proposing to solve that problem. That is sufficient to meet the motivation to combine. As for reasonable expectation of success, your honor is correct that the board did not make a finding that there wasn't sufficient evidence. The board did not reach that issue. And if the board on remand looks at Due and looks through Due walking through the various three-dimensional modalities, it is perfectly reasonable for the board to reach a conclusion that there is a reasonable expectation of success. Well, the question is whether or not the board actually reaches. The board's decision here is under a heading called rational to combine, right? Yes. And so they go through that. And then in the, over on the next page on 23, they say patent owner contends and we agree, blah, blah, blah. And the petitioner hasn't provided a meaningful analysis, motivated, or had success in combining. This is true. What do the words, this is true, mean? Well, I think it goes to the board's analysis, which is on the motivation to combine. This, it follows a sentence that reads, patent owner further argues. And I believe this is referring to the sentence that began patent owner further argues. It would be like patent lawyers here reading a claim. Yes, Your Honor, I guess my answer would be that without the explanation, I think the board has not given a sufficient explanation of its decision for your review. My question is whether we take the heading to rationale to combine as limited to rationale to combine or whether it also includes the latter sentence. Yes, I think Your Honor is correct that maybe the sentence itself is ambiguous. But when looking at the section overall, it really does address whether or not there would have been a motivation, not whether there would have been a reasonable expectation of success. And without that reasoned explanation, this court is without ability to review that decision. And on a remand, you're not gonna be allowed to add anything to the petition or the response. Correct, Your Honor. You're stuck with the highly conclusory statement by your expert. Well, in addition to the due reference itself, which walks through three-dimensional modalities and does provide a basis for the expectation that implementing three-dimensional technology into an augmented reality system of due would have a reasonable expectation of success. Thank you. Thank both sides. The case is submitted.